UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-25042-CIV-MORENO

BARBARA GARCIA,

    Plaintiff,

vs.

GOODWILL INDUSTRIES OF SOUTH
FLORIDA, INC.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS AND
## ORDER DISMISSING COMPLAINT WITH PREJUDICE

In this disability discrimination case, Plaintiff Barbara Garcia alleges in her Second Amended Complaint that her former employer, Defendant Goodwill Industries of South Florida, Inc., violated the Americans with Disabilities Act and the Florida Civil Rights Act by terminating Garcia's employment while she suffered from a heart condition. Goodwill Industries filed a Motion to Dismiss **(D.E. 20)**, asking the Court to dismiss the Second Amended Complaint with prejudice, for failing to state a claim upon which relief can be granted. Garcia insists that her allegations both comply with the Federal Rules of Civil Procedure and plausibly allege violations of federal and state law.

THE COURT has considered the Motion to Dismiss, the Response in Opposition, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Motion is **GRANTED** because Garcia's allegations do not plausibly allege that she suffered a covered disability under the American's with Disabilities Act, or that she was disabled at the time of her adverse employment decision. Furthermore, the Complaint is **DISMISSED WITH PREJUDICE** because the Second Amended Complaint fails to cure pleading deficiencies previously identified by the Court, and because any further amendment would be futile.

# I. BACKGROUND[1]

In 2016, Plaintiff Barbara Garcia was employed by Defendant Goodwill Industries. Around July 4, 2016, Garcia went to the hospital after "experiencing chest pains." (D.E. 19 at ¶ 19.) While at the hospital she was diagnosed with "being in the early stages of a heart attack." *Id.* Garcia's doctors wrote her two medical notes that took her off work until August 18, 2016. She provided both doctor's notes to her employer, Goodwill Industries, who accepted the notes. On August 18, 2016, during a scheduled follow-up appointment, Garcia received a new note from her doctor that kept her off work until August 22, 2016. When Garcia gave this doctor's note to Goodwill Industries, her manager "tore up the note." *Id.* at ¶ 24.

On August 19, 2016, a different doctor wrote Garcia a new medical note stating that she showed "signs of a transient stroke, uncontrolled blood pressure, and coronary artery disease." *Id.* at ¶ 25. This medical note also stated that Garcia's medical condition was "unstable" and that she "should avoid lifting anything more than 10lbs." *Id.* Once more, Garcia provided the medical note to Goodwill Industries. According to Garcia, her "medical condition substantially limited her ability to go to work, a major life activity." *Id.* at ¶ 34.

Then, on August 23, 2016, Garcia showed up for work at Goodwill Industries "with her uniform on ready to work and get back on the job," but was turned away by her manager who informed her that she was not allowed to work. *Id.* at ¶¶ 26–28. It was not until August 26, 2019 that Garcia received a letter (dated August 24, 2016) formally notifying her that her employment was terminated.[2]

---

[1] The facts in this section are taken directly from the Second Amended Complaint, as the Court is required at this stage to accept all allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The August 23 and 26 communications are the only two alleged communications that Goodwill Industries made to Garcia regarding the termination of her employment.

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Detailed factual allegations are not required, but a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted). Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III. DISCUSSION

The thrust of Garcia's Second Amended Complaint is that Goodwill Industries violated the Americans with Disabilities Act and the Florida Civil Rights Act when it decided to terminate Garcia's employment based on a heart condition (*i.e.* her disability), while she still suffered from the heart condition. Goodwill Industries argues that Garcia's disability discrimination claims under these Acts should be dismissed because: (1) Garcia fails to allege facts establishing that her alleged disability is covered under these Acts; and (2) even assuming Garcia can establish she suffered a covered disability, she fails to allege facts showing she was disabled at the time of her adverse employment decision.

At the outset, disability discrimination claims under the Florida Civil Rights Act are analyzed using the same framework as claims under the Americans with Disability Act. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) (citing *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005)). Consequently, to state a claim for disability discrimination under both Acts, Garcia must allege factual matter showing that she: (1) had a disability; (2) was qualified, with or without reasonable accommodations; and (3) was unlawfully discriminated against because of her disability. *Albright v. Columbia Cty. Bd. of Educ.*, 135 F. App'x 344, 345 (11th Cir. 2005) (citing *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir. 2004) (citing 42 U.S.C. § 12112(a))). Here, Goodwill Industries's arguments for dismissal focus only on the first prong, which includes whether Garcia suffered a covered disability and whether she suffered the covered disability at the time her employment was terminated.

### A. COVERED DISABILITY

The American's with Disabilities Act forbids covered entities from discriminating "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment." *See* § 12102(1)(A), (C). The Act goes on to define "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A).

In the Eleventh Circuit, courts have found that "merely noting the existence of a physical ailment, such as heart disease, without more, does not constitute a disability within the meaning of the applicable statute." *Peklun v. Tierra Del Mar Condo. Ass'n, Inc.*, 2015 WL 8029840, at *8

(S.D. Fla. Dec. 7, 2015) (citing *Hilburn v. Murata Elecs. of N. Am., Inc.*, 181 F.3d 1220, 1227–28 (11th Cir. 1999)). Rather, a complaint must allege factual matter explaining *how* the alleged ailment substantially limits a major life activity. *Id.* at *8; *cf. Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 921 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 1265 (2018) (finding allegation that a back impairment "when active substantially limit[ed] one or more . . . major life activities" was conclusory and could not establish a disability under the Americans with Disabilities Act).

The same is true in district courts throughout the country, which routinely reject conclusory allegations of disabilities under the Americans with Disabilities Act. *See, e.g., French v. Idaho State AFL-CIO*, 164 F. Supp. 3d 1205, 1218 (D. Idaho 2016) ("Without any facts concerning the nature or extent of her disabilities, [plaintiff's] allegations are insufficient to plausibly suggest she has a disability under the ADA."); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 401 (S.D.N.Y. 2011) (dismissing ADA claim because complaint alleged "no facts tending to show that [plaintiff's] medical condition limits, let alone substantially limits," any major life activity); *see also, e.g., Baker v. Nw. Med. Lake Forest Hosp.*, 2017 WL 2908766, at *5 (N.D. Ill. July 7, 2017) ("[Plaintiff] has not alleged or explained, however, how either of these diseases substantially limits any major life activity. . . . This alone is sufficient to dismiss her disability discrimination claims."); *Lambdin v. Marriott Resorts Hosp. Corp.*, 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) ("It is not enough for [plaintiff] to state, in conclusory fashion, that he has a disability. Having been injured or living with an impairment does not necessarily guarantee that one is protected by the ADA."); *Longariello v. Phoenix Union High Sch. Dist.*, 2009 WL 4827014, at *5 (D. Ariz. Dec. 15, 2009) ("Although he alleges that he is 'disabled,' . . . Plaintiff fails to identify the nature of his impairment and how that impairment substantially limits one or more of his major life activities.").

Here, the sole contention in the Second Amended Complaint specific to major life activities is Garcia's conclusory allegation that her "medical condition substantially limited her ability to go to

work, a major life activity." (D.E. 19 at ¶ 34.) Tangentially—although not alleged with specific reference to major life activities—Garcia also asserts: (1) she "experience[ed] chest pains" and was diagnosed with "being in the early stages of a heart attack," *id.* at ¶ 19; and (2) a doctor's note stated that Garcia showed "signs of a transient stroke, uncontrolled blood pressure, and coronary artery disease," that her medical condition was "unstable," and that she "should avoid lifting anything more than 10lbs," *id.* at ¶ 25.

The Court finds that these conclusory and unelaborated allegations fall short of establishing a covered disability under the Americans with Disabilities Act. The Second Amended Complaint is entirely devoid of factual allegations explaining or showing *how* the alleged heart condition limits—let alone substantially limits—any of Garcia's major life activities (employment related or otherwise). Simply put, these conclusory allegations are not enough to state a plausible disability discrimination claim under the Americans with Disabilities Act, and by extension the Florida Civil Rights Act.

### B. TIMING OF ADVERSE EMPLOYMENT ACTION

Even if Garcia sufficiently alleged a covered disability under the Americans with Disabilities Act and the Florida Civil Rights Act, she still fails to allege factual matter that, taken as true, would establish that she was disabled at the time her employment was terminated.

As discussed above, the Americans with Disabilities Act defines "disability" as, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment." *See* § 12102(1)(A), (C). In the Eleventh Circuit, it is settled that the term "impairment" in these sub-sections is "limited to impairments that exist at the time of the adverse employment action . . . ." *See Equal Emp't. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1315–16 (11th Cir. 2019) (collecting cases). Furthermore, "[a]n adverse employment action is deemed to have occurred when the employer made the final decision and communicated it to the employee." *Thomas v. CVS/Pharmacy*, 336 F. App'x

913, 915 (11th Cir. 2009) (*per curiam*) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258, 261–62 (1980)); *see also Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1369 (S.D. Fla. 2015), *aff'd sub nom. Liu v. Univ. of Miami Sch. of Med.*, 693 F. App'x 793 (11th Cir. 2017) (*per curiam*) (noting same).

Here, Garcia alleges that when she showed up to Goodwill Industries on August 23, 2016—"with her uniform on ready to work and get back on the job"—her manager informed her that "she was not allowed to work." (D.E. 19 at ¶¶ 26–27.) Garcia also alleges that around August 26, 2016, she "received a letter dated August 24, 2016 informing [her] that she no longer worked for Defendant." *Id.* at ¶ 29. These allegations doom Garcia's claims. While Garcia centers her case on "the exact date of the adverse employment decision"[3]—which she argues is "unknown" and thus "discovery is required" to find out the facts behind the decision (*see* D.E. 21 at 7)—the date of the employer's final decision is not the relevant date in assessing whether Garcia can state a claim. Rather, the Court must look to the date the final decision was *communicated to* Garcia. *See Thomas*, 336 F. App'x at 915.

According to the Second Amended Complaint, the final employment decision was communicated to Garcia on either August 23, 2016 (when the manager verbally informed Garcia that she was not allowed to work) or on August 26, 2016 (the date Garcia received the formal termination letter). (*See* D.E. 19 at ¶¶ 27, 29.) Either way, Garcia's claims fail because the final employment decision was *communicated* to her when she was not disabled—*i.e.* when she was "ready to work and get back on the job." *Id.* at ¶ 26.

Therefore, even when taking Garcia's allegations as true, she fails to plausibly allege that she was disabled under the Americans with Disabilities Act at the time of her adverse employment

---

[3] For instance, Garcia alleges that Goodwill Industries "made [the] decision to terminate [her] before August 24, 2016, when [she] was still unable to work due to her medical condition." (D.E. 19 at ¶ 31.) Slightly more specific, Garcia also alleges the "actual date of the decision of termination falls between August 18, 2016 and August 22, 2016, as evidenced by the Defendant's actions." *Id.* at ¶ 30.

decision. *See, e.g., Equal Emp't. Opportunity Comm'n v. STME, LLC*, 309 F. Supp. 3d 1207, 1216 (M.D. Fla. 2018), *aff'd*, 938 F.3d 1305 (11th Cir. 2019) (dismissing Americans with Disabilities Act claim because "Lowe had no existing rights under the ADA at the time of her termination, including no right to an accommodation, because she was not disabled, she was not regarded as being disabled, nor had she associated with any persons known to be disabled"); *Draper v. Fla. Rest. Grp., Inc.*, 2011 WL 13175991, at *8 (M.D. Fla. Apr. 5, 2011) ("At the time of his termination, the evidence is undisputed that [plaintiff] was not substantially limited in one or more major life activity, and therefore [plaintiff] cannot satisfy his burden of proof necessary to establish a disability within the meaning of the ADA."); *see also Rocco v. Gordon Food Serv.*, 998 F. Supp. 2d 422, 427–28 (W.D. Pa. 2014), *aff'd*, 609 F. App'x 96 (3d Cir. 2015) (dismissing Americans with Disabilities Act claim where "[a]t the time plaintiff was terminated, he was medically cleared to resume work"); *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513–15 (E.D. Pa. 2012) (dismissing Americans with Disabilities Act claim with prejudice where the Amended Complaint made "no allegations regarding [plaintiff's] physical condition at the time of termination," but rather "conclusively" stated that "[a]t the time of his firing, [p]laintiff was physically impaired and disabled within the meaning of the ADA").

C. **DISMISSAL WITH PREJUDICE**

The Court also finds that the Second Amended Complaint should be dismissed with prejudice.[4] Two reasons justify this conclusion.

---

[4] While Garcia did not request leave to amend in her Response in Opposition, or separately file a motion requesting leave to amend, the Court is not required to grant such leave *sua sponte*. *See Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (holding that "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court")).

First, the Second Amended Complaint fails to cure the pleading deficiencies that were specifically identified by the Court during a hearing on Goodwill Industries's motion to dismiss the Amended Complaint. The Eleventh Circuit has recognized that "[a]fter a district court grants an opportunity to amend and identifies the pleading's deficiencies, if the plaintiff fails to submit a proper pleading, dismissal with prejudice is appropriate." *Bloom v. Alvereze*, 498 F. App'x 867, 884 (11th Cir. 2012) (citing *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995)). During the hearing, the Court explained that merely alleging a "heart condition" and/or "early stages of a heart attack" was not enough to state a claim under the American with Disabilities Act. In granting Garcia leave to amend her complaint, the Court instructed that the Second Amended Complaint needed to allege facts explaining "how [the heart condition] affects her." Despite this guidance, the Second Amended Complaint still fails to allege facts explaining *how* these conditions "substantially limit" any of Garcia's major life activities. Accordingly, the Second Amended Complaint is dismissed with prejudice for failing to cure the critical pleading deficiency specifically identified by the Court. *See RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, 2018 WL 6110998, at *10 (S.D. Fla. Nov. 21, 2018) (dismissing first amended complaint with prejudice where the court provided the plaintiffs "with a clear directive on how to cure their pleading deficiencies" and the plaintiffs "fail[ed] to follow those instructions and cure the pleading deficiencies") (citations omitted).

The second reason the Second Amended Complaint is dismissed with prejudice is that the filing of a third amended complaint would be futile. In this Circuit, denying leave to amend is "justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)). As discussed above, Garcia received notice of the final employment decision after she returned to work with medical clearance from her doctors (*i.e.* when she was no longer disabled within the meaning of the Americans with Disabilities Act). Therefore, Garcia can

"add no facts to a [third amended complaint] that would change the outcome compelled by the allegations" in the Second Amended Complaint. *See Espinoza v. Countrywide Home Loans Servicing, L.P.*, 2014 WL 3845795, at *7 (S.D. Fla. Aug. 5, 2014), *aff'd*, 708 F. App'x 625 (11th Cir. 2017) (*per curiam*) (denying leave to amend second amended complaint as futile). That is, there are no new facts that Garcia can allege to establish that her employment was terminated while she was still disabled within the meaning of the Americans with Disabilities Act. Consequently, any further amendment would be futile. *Id.*; *see also STME, LLC*, 309 F. Supp. 3d at 1216, *aff'd*, 938 F.3d 1305 (11th Cir. 2019) (denying leave to amend complaint as futile because the underlying claimant "had no existing rights under the ADA at the time of her termination . . . because she was not disabled").

## IV. CONCLUSION

For these reasons, it is

**ADJUDGED** that the Motion to Dismiss is **GRANTED** and that the Second Amended Complaint is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to close the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th of November 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record